Mr. Allen. Good morning, Your Honors. May it please the Court, Jeremy Allman for Appellant Walmart. I'd like to reserve five minutes of rebuttal time. Like this Court stated in Lowry, this case will likely meet the average person's head-shaking disbelief. And I'm also reminded of our recent conversation that you had about Walmart in the last discussion. This dispute is over four lamps sold by a vendor named Sunsea Grocery in April and May of 2019 on Walmart.com. Despite knowing these facts, Ms. Russell and her attorneys sought nearly a million dollars in damages, plus punitives, through a seven-count complaint. Ms. Russell had a low degree of success at the trial. She lost on four of the five narrow claims based on Walmart's meritorious defenses. And she was awarded only 5-10% of the copyright claims for a total of $75,000 in statutory damages, or $27,000 in actual damages. Despite getting mere fractions of what she sought, the District Court awarded Ms. Russell's attorneys $1.5 million, or 90% of their overall fees. As stated in the seminal Hensley case that the Court referred to in the prior ruling, the result is what matters. The jury got it right. The District Court got it wrong. The District Court's disproportional award of 20 times the damages. I'm sorry, I thought you thought the jury got it wrong, at least with respect to the copyright claims. Absolutely, Your Honor. Yes, we are maintaining both. We do think the jury got it wrong as to the copyright infringement. But as far as the degree of success, we do move on both grounds that the copyright infringement ruling should be reversed, as well as the fees. But what's most egregious here, and what I wanted to address in my time here at first, was that the jury got it right about $75,000. So it would be an extreme departure from established case law. I would not further the purpose of the Copyright Act to award plaintiffs' counsel $1.7, $1.5 million when they were only awarded $75,000. So I'd like to focus on those two points. First, we do, in a de novo review, believe that the Court should reverse the jury's copyright infringement finding because Sunsea, the third party that sold the four lamps, they committed the volitional acts of distributing and displaying the copyrighted works. Can I ask you, both sides of, I think it is, for me at least, useful to distinguish between the claims based on the display of photographs on the website, and the claims based on the actual sale of the physical product. Because I think the analysis might be different with respect to those. So if I could ask you to address the sale of the lamps themselves. The jury heard evidence that the listing said that they were sold and shipped by Walmart. And there was evidence, I think, in the agreement with the vendor that Walmart would take title to the lamps and designated how they were shipped. Why isn't that evidence enough to allow the jury to infer that you were actually doing the sale, and that's enough of a volitional act? Because the sold and shipped by label is just a marketing disclosure by Walmart to ensure the customer that they can come to Walmart post-sale. To your question, Judge Miller, the distribution was undisputedly done by Sunsea. They sent it from their warehouse in Rancho Cucamonga directly to the four customers, including two to my friend on the other side. So the distribution was undisputedly done by Sunsea. That may be true, but it wasn't clear to me that that was in fact undisputed, Charles. That's what you're saying now? Yes. There was no dispute on that? Well, my friend on the other side will likely dispute it, but we believe that the business records are undisputed. He might dispute what Walmart's role in it in his opinion. But to answer the question of the distribution was done by Sunsea and shown by Walmart's business records. And is it true that Walmart took title to the lamps at some point? Only in the sense that once the product was picked up from Rancho Cucamonga after the sale happened, FedEx picked it up and delivered it to my friend on the other side and to two other people. So when you say take title, it's only for risk of loss after it's been sold, after it's been distributed. Such as if you're receiving something from FedEx or in the mail, who has the risk of loss? That's the only issue here with the sold and shipped by Walmart label, is that Walmart takes responsibility after the product has already left the third-party vendor. But couldn't, I mean, that all seems reasonable and maybe would persuade a jury, but why couldn't a jury read sold and shipped by to mean like you're actually the one selling it? Well, Walmart, like Amazon, like a lot of these online platforms, they want to make sure the customer's happy. That's their first and foremost goal. So when they say sold and shipped by Walmart, that's literally for post-sale activities. That is for customer service for returns. So these vendors took advantage of Walmart's ability to answer the phone if there was a problem with the delivery. So I think it's reasonable for a jury to understand that's how e-commerce works, that Walmart or eBay or Amazon, they're taking on the risk of loss and you can call them afterwards. That's nothing to do with a copyright analysis. And what most of this litigation was spent was regarding the Lanham Act claims and the unfair competition of punitives where my friend the other side was trying to blame Walmart for the sold and shipped by label, which is just an automatically applied label. The listing also says manufacturers, suppliers, and others provide what you see here, and we have not verified it. So the listing itself is on Walmart.com, but everybody understands that it's being sold by various parties, including Walmart, including others. And here the records clearly say, and the jury should have understood it, that Sunsea, they both displayed the goods, they uploaded the images, and they distributed them. So if I can move on to fees. We talked about the Hensley analysis, and I think the court was right in the last case also about Walmart, of course. So it's not lost on me that the Hensley analysis governs here. And so we think, like in Lowry, the district court's disproportionate award of 20 times the damages would be an outlier. Upholding it would be an extreme departure from established case law, including Hensley, including Lowry. It would not further the purpose of the Copyright Act. Can you address our decision in the Glacier Films? Because as I understand that case, we said that if you get something on each of your copyright claims, that counts as success, and it might be that what you got on each claim was small, but we want to encourage, the Copyright Act wants to encourage people to bring those claims, even when they're small, in order to achieve deterrence. Right. And please repeat, they asked for $750, and they got $750. Like Judge Lee said in the last case, if you asked for $500, the jury would probably give you $500. So if that had been the case, that would have been one thing. But here, the plaintiff asked for $850,000 plus punitives. So it's not like Glacier Films. They asked for $750 in Glacier Films. They got $750. 100% success. Here there was only 10% success. $850,000 plus punitives, that could have been millions of dollars. So Walmart zealously defended correctly because they were faced with potential for millions of dollars. So Walmart should get credit here for its reasonable defense of defending that Walmart was not the party that caused the infringement, and that the solvency by label is irrelevant to the copyright analysis. If I can just add to Judge Miller's question. I know you've cited Lowry, and I think Lowry's a great opinion, well-written, well-reasoned. But it is a slightly different context, and that was on class action fees. And here on the copyright, we do, there are some interests. So class actions may be, I don't know if you can apply the exact same analysis for a class action, even if it's a small damage. You couldn't have the deterrent effect by seeking a class action to hold the other party accountable with copyrights. Generally, you can't do class actions. Maybe the damage is small. So there are some policy goals further in the Copyright Act. So courts, it can't be limited to just the amount of damage awarded because there's a kind of policy goal that courts can consider if they think it's an important one. Right. And we agree that Lowry's a great opinion, of course. But we think here that the fees are so disproportional, right? $1.7 million in Lowry, $50,000 in the class action settlement. Here, $1.5 million in fees on 27,000 actual damages per 75,000 of statutory. There are different considerations in copyright law, but the court's decision in Lowry said it didn't apply to copyright cases. But Lowry cited all of the Hensley cases and all the Hensley line of cases. The Lennart Toys case from 2020, which is affirmed without opinion. C.E. Callot is directly on point as well. There, the plaintiffs tried to say that they should get so many fees because the defendant had destroyed their business. The same is true here. Plaintiffs sought $850,000 here and only achieved the $75,000 jury award because the plaintiff, Ms. Russell, claimed that Walmart had destroyed her entire business. So we think that while you're talking about Lowry and the benefit to the class, we think this is even more egregious here where the referral is an issue, yet Ms. Russell claimed that Walmart had destroyed her entire business, and they sought to legate this case all the way through trial, and the jury largely agreed with Walmart. So we think that while Lowry is a settlement of class action here, we went all the way through trial, and the jury largely agreed with Walmart. We won on four of the five claims completely, including all the claims involving misownership by label. All of those arguments were that Walmart was deceiving customers, deceiving the public. We won on all those claims. We won on the punitives. So all that was left was 10% of a copyright claim, about four lamps. So we believe Lowry is very instructive here and helpful. We believe that under the copyright laws, such as Lennard, and under the Hensley line of cases that the court has referenced, all of the authorities helped Walmart. What would be the reasonable fee in your mind, then? Reasonable fee, we're not disputing that plaintiff prevailed on 10% of their claim and should get $75,000. I see that I'm into my time. Can I reserve it? You may. Thank you. Mr. Ruttenberg. Good morning. May it please the Court, Guy Ruttenberg for Roxanna Russell. There are two appeals before the Court. The first one involves the appeal, as far as I can tell, of the district court's denial of a Rule 50B motion. At least that was my understanding reading the opening brief. And as we explained, the Court doesn't have jurisdiction to address the denial of a Rule 50B motion because under Federal Rule of Appellate Procedure 4A, 4A, there was no subsequent notice of appeal filed after that ruling. So it's not entirely clear what is being appealed that is a prejudgment ruling, but also to the extent we get beyond that, the district court found that Walmart waived the appeal. Excuse me, waived its argument, its challenges to the jury verdict, at least with respect to infringement, because they did not challenge, because the A stage, or for that matter, in their opening brief on the 50B motion, many of the bases for the verdict. Walmart, in its opening brief, did not address waiver. And in fact, Walmart waived the challenge to waiver, as we explained in our brief, because they didn't need to address the argument. Even if we get beyond all of those things, the verdict is amply supported here. Despite what my friend on the other side says, this is a case where Walmart itself was selling lamps and posted images of my client's copyrighted photographs of her also copyrighted sculptural works to sell cheap knockoffs. Do you dispute that the lamps, in fact, came from Sunsea and Rancho Cucamonga? I think the lamps may have been manufactured by Sunsea, but in terms of who sold them and who posted them, what the evidence shows is Walmart has what it calls third-party sellers, 3P, and it has first-party sellers, 1P. And the evidence at trial, and for that matter, before trial, was that all of these listings are 1P sellers. 1P sellers can be either a Walmart employee who posted up, or some Walmart agent that they hire that they call a toxic vendor, who will create the listing. And the only two witnesses for Walmart who testified, those in cross-examination, admitted that they actually don't know whether these particular listings were created by a Walmart employee or a Walmart agent. So that's about the listing, but the lamp itself came from Sunsea's warehouse, and it was a Sunsea person who put it in a box in Rancho Cucamonga. Is that? I thought that's what your friend on the other side says the evidence shows, and that that was undisputed. Did you have some evidence disputing that? The evidence of that in all of it was inconclusive as to who was the physical person that did that. What the actual witnesses, and both of them ultimately testified that they don't know the answer, and they presented documents, and both of them ultimately said, we actually don't know what's the matter with these documents. We don't use them in our ordinary course and can't interpret them, which is why the court said that the witnesses were repeatedly impeached and were not credible. Which is, so in terms of. . . Right, but you're the plaintiff, right? Right. So if the answer is we just have no idea, that seems like that would mean that you lose, right? You have to prove or present evidence from which a rational jury could conclude that it was actually Walmart that did this, right? I have to prove that it was Walmart that did that. I don't have to prove whether it was Walmart that did it through someone who is a 1099 as opposed to a W-2. In my view, it doesn't matter whether that individual was one or the other. Walmart is a corporation that acts through its agents. So whether Walmart did it through a woman that happens to be an employee or whether they did it through a contractor, that's not part of my burden of proof. What we did prove and what the jury accepted is that the evidence was that this was a 1P listing, that Walmart itself created either directly or through a dropship vendor, that Walmart itself, even if it was a dropship vendor, in those contexts, as Your Honor pointed out, Walmart actually takes title to those items and Walmart is the one that actually makes the sale to the consumer. Walmart also has a whole host of rules and regulations about how things are posted. They require pictures. They have supervisory role over those pictures, even if it's a DSV. And ultimately, Walmart couldn't tell us whether it was a DSV or an individual or not from our perspective. Either way, Walmart is liable. Well, so now, I mean, since you brought up the pictures, our cases say that if all you're doing is sort of running a website that people can put pictures on, there's not volitional conduct on the part of the person running the website. So what is the evidence that anybody at Walmart or that Walmart did anything more than allow Sunsea to put pictures on the listing? Well, I think this is different than the sort of typical case where you have a third party come in. Again, what Walmart says, according to their own contract, is you have either an employee or a contractor, who's a 1099 essentially, that will post it at the direction of Walmart on Walmart's behalf. And what your case law has said is when you look at these elements of a copyright claim, you look at agency principles. And whether it's direct authority, because Walmart has said that this person that's posting on the website is our employee, or it's ostensible or apparent authority, or Walmart has said we're going to let this person hold themselves out as Walmart by saying they are sold and shipped. So you're saying that as long as there's a contractual relationship between the person running the website and the person putting the pictures on it, that then anything done by the uploading person is therefore attributable to the host of the website under agency principles? No. I'm saying as long as there's a contracting principle, as long as there's a contract where through the contract Walmart allows that person to hold themselves out as Walmart, that would be ostensible authority. In other words, Walmart has marketplace sellers. There are different categories of 3P sellers. Where if you go to Walmart.com, you'll say this is sold and shipped by maybe somebody else, right? That's not these listings. These listings are sold and shipped by Walmart. And that means something. That means Walmart has used its goodwill and contractually said we're going to let this person pretend to be Walmart. A user can't tell the difference. Even Walmart's employees have testified in trials that we can't tell the difference whether it's a Walmart employee or a DSV. So that's very different than a third party that says I'm just going to post. It's also different how the images are delivered, right? Because with a Walmart DSV, like a Walmart employee, all of the images are actually stored on the Walmart server and delivered by Walmart itself. Similarly, with a DSV, that's true no matter whether it's a third party. It has to be stored on the Walmart server or else. That's what allows the customer to see it when they go to the Walmart website, right? No, there's a difference between where a third party in some of the cases actually stores the website itself, but it gets redirected because of a link as opposed to the images actually being delivered by Walmart itself. Have we ever suggested that that makes a difference? I think in Zillow, the pictures were on the Zillow server, weren't they? I think in Zillow, and I have to go back and look at this, I think it was actually, there was a link in some of the dividends cases, there was a link. And I think the other difference here, of course, is Walmart itself requires these pictures, right? This is not a third party, like you look at YouTube and there's a content provider that's posted something to YouTube. And you can, you know, same thing with the DMCA. You can say, hey, Walmart, take down the picture because company ABC has posted the other content. To everybody in the public, and I think even to the Walmart employees who testified, this appears as a Walmart 1P posting and listing. And so I think that's an important distinction. I've taken up a lot of your time on this. Sorry for talking. Do you want to answer some of the questions? Sure. There's plenty of evidence that you should use a trial that shows that Walmart has legal authority and right to reject postings, reject photos.  And what was the evidence of active political conduct by Walmart? I guess one of it you're saying is they allow them to be portrayed as Walmart. I guess is kind of what you were saying. What else was introduced? A trial that shows kind of the more active involvement of Walmart, as opposed to having the legal authority and right to intervene if it wanted to. Well, I think it said that Walmart actually requires these postings to be, it actually says when you're dealing with the DSV, they have regulations. And we talked about them briefly. It says you actually have to put up pictures. You have to put up good quality pictures. We have the right to reject those pictures. You are our DSV in this context, right? So you are working for us contractually, and you're doing it in our name. So I think there's quite a bit of evidence of that. And again, ultimately, these are first party listings is what the evidence shows. Walmart views these as its own listings. So I think that's quite a bit of evidence of political conduct. And I think that would be quite a departure if we will let someone say, you know, it's one thing to say that you need, you know, Walmart to be involved when there's kind of a forum, right? Like whether it's YouTube or whether it's a marketplace where third parties are posting things on there. And Walmart, it's not on behalf of Walmart. This is a different category of product. These are on behalf of Walmart, with Walmart's employees deeply involved. And the only difference is this happens to be someone, if it was indeed a DSV, then it was someone that was contracted to act as Walmart in Walmart's name, as opposed to someone that was actually a W2 employee at Walmart. And so that's even if we get to any of the merits, which I don't see how we do. But I do want to talk about the fees issues, because I think that's also very important. And I think on the fees issues, what we have here is a case that we have an artist that says, I'm looking at a Walmart page and I see my copyrighted pictures being used, my copyrighted pictures of my copyrighted sculptures being used to sell these knockoff products. And before she brings it, right, we reach out to Walmart. And what we get are these excuses and, oh, that's a coding error, which ended up being false, or it's a marketplace seller, which ended up being false. And so we have to bring a lawsuit. And the suggestion that in the lawsuit we somehow sought millions of dollars in our complaint, that certainly wasn't true. And the district court actually addressed some of the damages there is. It didn't do it in the order itself, granting fees, but incorporated its other opinions. And I think it's important to note that a lot of the damages that were sought, and this is why a copyright case is actually different, because the damages in copyright cases are the actual damages, one of the biggest components. And, in fact, in our case, the biggest component of the damages that were put up to a jury was disbarment. And what the court said in disbarment was Ms. Russell is actually reasonable in seeking over, excuse me, nearly $300,000 in disbarment because, and this is from the MSJ order at SCR 235 and also in the mill order at SCR 112, what the court said is plaintiff attempted to isolate the amount of revenue associated only with accused listings, but Weber asserted that it doesn't keep the data. Plaintiff could not now be faulted for Walmart's failure to keep more specific data. And it goes on to explain the burdens. And so a lot of those damages were not because plaintiff came in and said, I'm looking for tens of millions of dollars. This is what plaintiff had said. I'm looking for them to keep my rights. And she tried to do that without filing suit. That didn't work. Similarly, the suggestion from my friend on the other side was that this involved only four lamps. That was hotly disputed at trial. What ended up happening is that there was never any concrete evidence as to how many lamps were actually sold. And, of course, regardless of how many lamps were sold, the images were also used on the website. And there was also suggestion that somehow this was about, that the fees were about the land match. That's not supported by the record, and it's also incorrect. What the court said in the order, and it's a pretty detailed 16-page order explaining the fees, what the court said is that the reason the fees got to where they were was because Walmart went in there, because Walmart litigated issues and re-litigated issues. And they didn't just litigate the position of emotional conduct. They actually didn't even raise that issue until very late in the case. What they spent most of their time litigating, Your Honors, and this is clear from the summary judgment rulings, the motions illuminated at trial, is they disputed the validity of Ms. Russell's copyrights, both the pictorial and sculptural works. They went and hired an expert to challenge the elements of infringement. Even after the court rejected their arguments, they kept litigating and litigating them. They disputed her authorship. There are instances within the summary judgment record where the court says that Walmart essentially fabricated this theory that somehow Ms. Russell had referred an inquiry to somebody else for licensing. None of that was true. And even after the court multiple times said these arguments are meritless, frivolous, have been rejected, Walmart said we're going to re-litigate them at trial, that's detailed in the court summary judgment ruling. It's detailed in the motion relay rulings. It's actually detailed in the order granting fees. Now, I don't think Lowery is a good enough point for the reasons that Your Honor pointed out. I think it's a class action case, and it's specific to a class action case. But the court here did go through all of the factors in quite some detail. It talked about what the overall success was. This wasn't a case where the plaintiff was looking for millions of dollars. That's not what this case was about. What the plaintiff was looking for was vindication of her rights. And the court said, nonetheless, because there was – the court first of all said that the LAMAC claims were interrelated with the copyright claims. That finding is – no one has challenged that as clear ever. I'm sorry, it looks like my time is up. Unless there are any further questions. Thank you. Thank you. I'd like to quickly take up the issue of volitional conduct and intentionally erase, which I think is very important here. You saw my friend on the other side did not have any evidence that Walmart committed volitional conduct, engage in any affirmative acts. Walmart's website just passively facilitates sales between third parties like Sunsea and customers like my friend on the other side. So I think that point is very well taken. Walmart certainly believes that the copyright infringement finding was incorrect and should be reversed. So I'd like to focus on that in my rebuttal time. I'm happy to answer questions about the fees, but I think we've already discussed that, the very limited success here. But on the copyright issue, Walmart did not upload the photographs. Nobody at Walmart uploaded the photographs. The trial evidence did not show that anybody at Walmart did that. Walmart actually never touched the photographs. Walmart never touched the products. The first time Walmart ever saw the links in issue was at trial. So Walmart had no involvement whatsoever. The trial transcript you will see from the record shows that Walmart was never involved. Suppliers do all the work. They supply all the imagery, all the content. And so just to address that question, you heard from the other side, there's no volitional conduct by Walmart. They are merely a platform just like Amazon, just like everybody else. The little difficult thing about this case is this isn't just like eBay where they're just hosting and people post whatever they want, and, you know, eBay just takes a little commission here. I mean, here, as Judge Miller said, they took title at a certain point. They set the price and collected the money. They did have all this legal right to intervene if necessary, and I guess they potentially, you know, told people it was from Walmart, shipped and sold from Walmart. I mean, is that enough for the jury maybe just to infer from all of this that Walmart had to have known more, been involved more? We don't believe so that it was reasonable for the jury to infer that. That's a different situation of active involvement where, like Redbubble, where they're actually printing the T-shirts. It's different from the situation. These are just third-party sellers on Walmart. How the third parties decide to ship, they can ship either as a DSV or as a marketplace seller at the same vendor. It's just a question of how post-sale activities happen, so it has nothing to do with the copyright inquiry of displaying and distributing. Those are both the same whether it's a third-party selling that is sold and shipped by Mr. Ellman or is sold and shipped by Walmart. It's the same. From Walmart's point of view, it's the same. They want their customers to be happy. It's simply where a third party does not have the customer service or returnability that Walmart steps in after the sale has taken place, after the infringing activity has taken place, that Walmart steps in to help a customer if they want to return the item. One of these four lamps was returned. To my friend on the other side's point about the four lamps, it was conclusively established by records, and I'll tell you it's an ER-948 for sales. That's it. There's never a question. My friend on the other side, they spent a lot of money trying to prove there was more than four sales, but that's it. So we're talking about a $1.5 million fee award. Where the jury largely got it right, they only awarded $27,000 in actual damages because there was only four sales. So Walmart's meritorious defense is that they were not involved. They were not Sunsea. Sunsea was not their agent. Walmart had a contract with Sunsea or Sunsea had to indemnify Walmart. Walmart never talked to Sunsea, so they are completely a third party. So it is no different from any other case where something is sold on an e-commerce website. So we believe, you know, it's in accord with all of those other cases that we cited, and Walmart should be protected by the DMCA. And we believe that we proved the DMCA as well, that Walmart has a term. They have a repeated infringement policy. They recently implemented it here. Here, Sunsea was kicked off the platform. And so we believe that on the contrary, on the merit that Walmart should win, the jury largely agreed with Walmart. They filed for Walmart on all the other claims, including punitive damages, and only awarded 5%, 10% on the copyright. So I think I'm over time. Thank you, counsel. Thank you, both counsel, for their arguments and the cases submitted. And we return. All rise. Court for this session stands adjourned.
judges: MILLER, LEE, DESAI